UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY SCHRAMM,<br><br>    Plaintiff,<br><br>v.<br><br>MONTAGE HEALTH, et al.,<br><br>    Defendants. | Case No.17-cv-02757-HRL<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 26 |

Pro se Plaintiff Kelly Schramm ("Schramm") sues Community Hospital of the Monterey Peninsula ("CHOMP")[1], Montage Health, Community Hospital Endowments, Dr. Steven Packer, James Montgomery, Kelly Schmidt, Monterey Bay Emergency Physicians Medical Corporation, Dr. Randeep Singh, and Dr. Samuel Melton (collectively "Defendants"). Schramm's amended complaint contains seven claims, all related to events that took place at CHOMP in 2013 and 2015. Dkt. No. 23. Defendants move to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Dkt. No. 26. For the reasons explained below, the Court grants the motion to dismiss.

**I. BACKGROUND**

Schramm's amended complaint alleges the following facts. In August 2013, Defendants "red-flagged" Schramm, essentially banning her from CHOMP. Dkt. No. 23 ¶¶ 32, 33, 53. CHOMP identified Schramm as a "mentally ill drug addict," *id.* ¶ 53, and on that basis, sent

---

[1] Schramm did not name CHOMP as a defendant. Instead, Schramm sued Montage Health and Community Hospital Endowments, which, according to the amended complaint, recently merged to form CHOMP's parent company. Dkt. No. 23 ¶ 7. Defendants dispute this characterization of CHOMP's corporate structure, Dkt. No. 26 at 6, and CHOMP appeared as one of the parties to the motion to dismiss.

1  Schramm a letter encouraging her not to seek care at CHOMP, *id.* ¶ 52. Schramm has bipolar
2  disorder, but she denies being a drug addict. *Id.* ¶ 120. Schramm presented at CHOMP's
3  emergency room at least twice between 2013 and 2015, but on both occasions, hospital staff failed
4  to adequately address her medical complaints. *Id.* ¶¶ 130-31.

Two years after the "red-flagging" letter, on May 13, 2015, Schramm awoke to the sound of police knocking on her front door. *Id.* ¶ 18. According to Schramm, a social worker was concerned for Schramm's well-being, and had asked the police to check in on her. *Id.* ¶ 29. Schramm was disoriented and frightened when the police arrived, but after coming to, she reported to the police that she had been raped the night before. *Id.* ¶ 22. She was also experiencing sharp pain in her neck and abdomen. *Id.* ¶¶ 19-22. The police called for an ambulance, which drove Schramm to CHOMP despite her request to be taken to an alternate hospital. *Id.* ¶¶ 23, 31. According to Schrmam, neither the police nor the ambulance technicians requested that she be detained under California Welfare and Institutions Code § 5150.[2]

Schramm arrived at CHOMP's emergency room, and events took a chaotic turn. Defendant Schmidt, a registered nurse, attempted to take Schramm's blood pressure. *Id.* ¶ 40. Schramm, however, did not feel safe at CHOMP, and was frustrated that hospital staff were not taking her rape allegation seriously. *Id.* ¶ 44. Schramm attempted to leave the hospital, but was confronted by Defendant Montgomery, a security guard. *Id.* ¶¶ 58, 61. Hospital staff later reported that Schramm became "violent and combative," *id.* ¶ 77, and that she fought with Montgomery, *id.* ¶ 71. Although Schramm denies that she was aggressive, Montgomery and other hospital staff prevented her from leaving the hospital, and restrained her on a "hard[,] shiny[,] stainless steel" table. *Id.* ¶ 83. Schramm alleges that she suffered three broken ribs and other injuries in the course of being tied down. *Id.* ¶ 88.

At some point after the altercation with the security guard, hospital staff prepared an application to place Schramm under a § 5150 hold. *Id.* ¶ 73. Schramm denies that her behavior or mental state justified a § 5150 hold. *Id.* ¶ 74. Schramm further alleges that once restrained, she

---

[2] Section 5150, authorizes the temporary detention of persons who, as a result of a mental health disorder, pose a danger to themselves or to others. Cal. Welf. & Inst. Code § 51501(a).

2

was sedated and subjected to "various tests" without her consent. *Id.* ¶¶ 114, 147.

Eventually, Schramm was transferred from the emergency room and admitted to CHOMP's non-emergency facilities. *Id.* ¶ 146. Schramm alleges that her admission to the hospital, and the treatment she received, were a ruse on the part of Defendants to hide their discriminatory and abusive conduct. *Id.* ¶¶ 146-147. Although it is not clear from the amended complaint, it appears that Schramm remained at CHOMP from May 13 through May 15, 2015. *Id.* ¶ 181.

Schramm filed a complaint on May 12, 2017, Dkt. No. 1, and Defendants moved to dismiss, Dkt. No. 16. Twenty-one days after service of the original motion to dismiss, Schramm filed an amended complaint. Dkt. No. 23. Defendants withdrew their earlier motion to dismiss, Dkt. No. 25, and then moved to dismiss the amended complaint, Dkt. No. 26. Schramm opposed the motion, Dkt. No. 27, and the Court held oral arguments on October 17, 2017, Dkt. No. 30.

The amended complaint contains seven claims: (1) violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA") (42 U.S.C. § 1395dd); (2) violation of the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12101, *et seq.*); (3) violation of the California Unruh Civil Rights Act (Cal. Civ. Code §§ 51-53); (4) intentional infliction of emotional distress; (5) assault and battery; (6) false imprisonment; (7) and violation of the Lanterman-Petris-Short Act (Cal. Wefl. & Inst. Code §§ 5000, *et seq.*). The amended complaint is not entirely clear as to which claims apply to which defendants. The Court will therefore assume, for the purpose of this motion to dismiss, that all of Schramm's claims apply to all of the defendants. Further, for the sake of clarity, the Court will refer to Defendants CHOMP, Montage Health, Community Hospital Endowments, and Monterey Bay Emergency Physicians Medical Corporation as the "Institutional Defendants," and will refer to the remaining defendants as the "Individual Defendants."

All parties consented to magistrate judge jurisdiction. Dkt. Nos. 7, 19.

## II. LEGAL STANDARD

In considering a motion to dismiss, a court accepts all of the plaintiff's factual allegations as true and construes the pleadings in the light most favorable to the plaintiff. *Manzarek v. St.*

3

*Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). To survive a motion to dismiss, however, a complaint must allege sufficient facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 557). In evaluating plausibility, "courts must also consider an 'obvious alternative explanation' for defendant's behavior." *Id.* at 996 (quoting *Twombly*, 550 U.S. at 682). "Dismissal may also be based on the absence of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Separately, a court must liberally construe pleadings by litigants who represent themselves. *See Haines v. Kerner*, 404 U.S. 519 (1972). Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that no amendment can cure the defect." *Murphy v. United States Postal Serv.*, C 14-02156-SI, 2014 WL 4437731, at *2 (N.D. Cal. 2014) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980)).

## III.  DISCUSSION

### A.  EMTALA

EMTALA prohibits a defined class of hospitals from "dumping" indigent patients, either by refusing to care for such patients, or by discharging them before their conditions stabilize. *See Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir. 1995). EMTALA creates a private right of action for patients to sue hospitals who engage in patient dumping, but does not allow for claims against individual doctors. *Id.* at 1256. Plaintiffs have two years to bring a claim against a hospital for an EMTALA violation. 42 U.S.C. § 1395dd(d)(2)(C).

To state a claim under EMTALA, a plaintiff must allege either: (1) that she requested examination or treatment from the emergency department of a covered hospital, and that the hospital failed to conduct an "appropriate medical screening . . . to determine whether or not an emergency medical condition . . . exist[ed]"; or (2) that once the hospital determined that the plaintiff had an emergency medical condition, the hospital improperly transferred the plaintiff

4

before stabilizing her condition. *See* 42 U.S.C. §§ 1395dd(a), (b). Transfer is defined in EMTALA to include discharge and movement to another facility. 42 U.S.C. § 1395dd(e)(4). Stabilization is defined as providing medical treatment such that "no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility . . . ." 42 U.S.C. § 1395dd(e)(3).

EMTALA's medical screening and stabilization requirements are not equivalent to the objective standards of care one would find in state law on medical malpractice or negligence. As the Ninth Circuit explained, Congress' purpose in enacting EMTALA was "not to improve the overall standard of medical care, but to ensure that hospitals do not refuse essential emergency care because of a patient's inability to pay." *Eberhardt*, 62 F.3d at 1258 (citation omitted). As a result, "a hospital does not violate EMTALA if it fails to detect or if it misdiagnoses an emergency condition." *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1166 (9th Cir. 2002) (citation omitted). Similarly, "EMTALA's stabilization requirement ends when an individual is admitted for inpatient care." *Id.* at 1167-70.

That said, the Ninth Circuit has suggested that EMTALA may create some baseline standard of care. A hospital may be found liable if its emergency screening is "so cursory that it is not designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury." *Id.* at 1166 n.3 (internal quotation marks and citation omitted). Similarly, a hospital may not "escape liability under EMTALA by ostensibly 'admitting' a patient, with no intention of treating the patient, and then discharging or transferring the patient without having met the stabilization requirement." *Id.* at 1169.

Nevertheless, the Ninth Circuit expressed skepticism that hospitals would engage in such "subterfuge," and has emphasized that Congress enacted EMTALA "to create a new cause of action, generally unavailable under state tort law, for what amounts to failure to treat," and not to "duplicate preexisting legal protections." *Id.* at 1168–69 (internal quotation marks and citations omitted).

Here, Schramm filed her original complaint in May 2017, so any alleged EMTALA violations occurring prior to May 2015 – including the 2013 "red-flagging," – are time-barred. 42

U.S.C. § 1395dd(d)(2)(C) (two-year statute of limitations). The Court cannot think of any reason why the statute of limitations would be tolled. Therefore, any EMTALA claim as to conduct prior to May 2015 is dismissed without leave to amend. Moreover, to the extent that the amended complaint asserts EMTALA claims against any of the Individual Defendants, those claims are also dismissed without leave to amend because such claims are not available under EMTALA. *See Eberhardt*, 62 F.3d at 1256 (no private right of action against individuals).

As to the Institutional Defendants, Schramm seems to allege that they violated EMTALA by "failing provide an appropriate medical screening exam when [she] presented to the emergency room following the rape." Dkt No. 23 ¶ 137. At this stage, it appears unlikely that Schramm will be able to state a claim for relief under EMTALA. After all, the heart of Schramm's amended complaint is not that she was turned away by the hospital, but that she was forced to stay against her will. That is not the kind of harm EMTALA was enacted to remedy. *Cf. Bryant,* 289 F.3d at 1168-69. Moreover, Schramm acknowledges that hospital staff engaged in quite a bit of medical care, even if she disagrees with how it was conducted. For example, hospital staff tried to take Schramm's blood pressure, Dkt. No. 23 ¶ 44, and subjected Schramm to "various tests" after she was sedated, *id.* ¶¶ 114, 147. Schramm was even admitted to the non-emergency facilities of the hospital, *id.* ¶ 146, where she remained for two nights, *id.* ¶ 181. *See Bryant*, 289 F.3d at 1167-70 (EMTALA's stabilization requirement generally satisfied by hospital admission). These facts would seem to seriously undermine any EMTALA claim Schramm might bring.

But was the hospital's response to the rape report so deficient as to violate EMTALA? Schramm seems to argue not that Defendants failed to adequately treat her for rape, but that they ignored her rape report altogether. Defendants have not convinced the Court that such a claim must necessarily fail, but the amended complaint makes it difficult for the Court to determine what Schramm's claim is in the first place. Accordingly, the Court dismisses Schramm's EMTALA claims as to the Institutional Defendants with leave to amend. If Schramm wishes to further amend her complaint, she is instructed to state clearly why she believes that the Defendants violated EMTALA. For example, if Schramm's argument is that Defendants failed to conduct a medical screening, or that the screening was so cursory as to violate EMTALA, then she should

say so without cluttering her complaint with unrelated facts and accusations.

**B.     ADA**

"To prevail on a Title III discrimination claim, the plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Here, Schramm contends that she is disabled under the ADA due to her bipolar disorder. The amended complaint seems to allege that Defendants violated the ADA in 2015 by refusing to allow Schramm to decline treatment at CHOMP. Dkt. No. 23 ¶ 156. Schramm's argument appears to be that, but for her disability, Defendants would have allowed her to decline treatment, and that this conduct amounted to illegal discrimination.

The Court is not familiar with any ADA case arising under this kind of fact pattern, and has doubts as to whether such an allegation would give rise to relief under the ADA. In addition, the amended complaint does not offer much factual support to suggest that Defendants' conduct reflected discrimination on the basis of Schramm's bipolar disorder, as opposed to treatment of that very condition. *See Eclectic Properties*, 751 F.3d at 995 ("courts must also consider an 'obvious alternative explanation' for defendant's behavior") (quoting *Twomby*, 550 U.S. at 682). Finally, as with Schramm's EMTALA claims, the Court had difficulty pinning down exactly what Schramm's ADA claim was.

Assuming, however, that the Court properly understood Schramm's amended complaint, Defendants did not point to any authority for the proposition that an alleged failure to afford a disabled person the right to decline service or treatment necessarily fails to state a claim under the ADA. Moreover, the case law that Defendants did cite in their motion to dismiss either came from outside the Ninth Circuit, or arose in the context of Title II of the ADA, which deals with state and local government services. *See* 42 U.S.C. § 12132; Dkt. No. 26. Schramm's allegation arises under Title III, which governs the rights of the disabled in the public accommodations context. *See* 42 U.S.C. § 12182.

Accordingly, the Court dismisses Schramm's ADA claim with leave to amend. If Schramm wishes to further amend her complaint, she is instructed to state with clarity how she believes Defendants violated the ADA, and to avoid obscuring her argument with extraneous material.

Separately, Schramm explained at the October 17 hearing that the amended complaint raises a second ADA claim: that Defendants failed to reasonably accommodate Schramm's disability when they violently restrained her in 2015. This claim was not clear from the face of the amended complaint, and the Court is skeptical that such an allegation would state a claim for relief under the ADA. The Court, however, grants Schramm leave to assert this claim in an amended complaint.

### C. Supplemental Jurisdiction

All of Schramm's remaining claims are premised on California law. Because the Court has dismissed all federal claims, albeit with leave to amend, the Court may decline to exercise jurisdiction over Schramm's state law claims unless and until a viable federal claim is adequately pled. 28 U.S.C. § 1367(c)(3); *see also Alakozai v. Valley Credit Union*, No. C10-02454 HRL, 2010 WL 5017173, at *1 (N.D. Cal. Dec. 3, 2010) (dismissing federal claim with leave to amend and declining supplemental jurisdiction over remaining state law claims). Accordingly, the Court declines to exercise jurisdiction over claims three through seven of Schramm's amended complaint, and dismisses them without prejudice

## IV. CONCLUSION

Based on the foregoing, the Court dismisses Schramm's amended complaint with leave to amend. Schramm may file a second amended complaint within thirty days of the issuance of this order, *i.e.,* on or before **November 22, 2017**. If Schramm wishes to further amend her complaint, the Court reiterates the following instructions:

- Schramm must state clearly which of her claims apply to which defendants.
- As to EMTALA, Schramm may not raise a claim for any conduct that occurred prior to May 12, 2015. Further, Schramm may not raise an EMTALA claim against any of the Individual Defendants.

- As to both EMTALA and the ADA, Schramm should state clearly what each of her claims are, and avoid cluttering her complaint with unrelated accusations.
- Finally, the Court encourages Schramm to continue to seek out assistance from the Federal Pro Se Program or a private attorney.

**IT IS SO ORDERED.**

Dated: October 23, 2017

HOWARD R. LLOYD
United States Magistrate Judge