UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KELLY SCHRAMM,

          Plaintiff,

    v.

MONTAGE HEALTH, et al.,

          Defendants.

Case No.17-cv-02757-HRL

**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 40

Pro se plaintiff Kelly Schramm ("Schramm") sues Community Hospital of the Monterey Peninsula ("CHOMP") for alleged violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA") and the Americans with Disabilities Act ("ADA"). CHOMP moves to dismiss Schramm's second amended complaint ("SAC") for failure to state a claim upon which relief can be granted. For the reasons explained below, the Court grants the motion.

All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 7, 19

# I. BACKGROUND

## A. Factual Allegations

Schramm alleges roughly the same facts in her SAC as she did in her first amended complaint ("FAC").

One morning in May 2015, Schramm awoke to the sound of police knocking on her door. Dkt. No. 38 at 8. She was disoriented and distraught. She could not remember coming home the previous night, and her neck and abdomen were in pain. *Id.* Schramm eventually regained her composure and realized that a neighbor raped her the night before. *Id.* The police called for an ambulance, which, over Schramm's objections, drove her to CHOMP. *Id.* at 10. Schramm felt that CHOMP had previously discriminated against her because of her bipolar disorder, and she

1 doubted she would receive adequate care there. *Id.*

2 When Schramm arrived at CHOMP's emergency room, she met first with a nurse named Kelly Schmidt. *Id.* at 11. Schmidt wrote in her notes that Schramm had been raped, and she observed scratches and bruises on Schramm's left leg. *Id.* Throughout this initial interview, though, Schramm felt like Schmidt was not taking the rape allegation seriously. Schmidt asked if Schramm had been drinking and spoke in an "irritated and annoyed tone." *Id.* Schramm, suspecting that she had ingested some kind of date-rape drug, was especially frustrated that Schmidt did not administer a toxicology test. Worse, Schmidt did not test for sextually transmitted diseases or administer a rape kit, a set of instruments used to gather and preserve evidence of a sexual assault. Schramm was so upset that she refused to let Schmidt take her blood pressure and requested the assistance of another nurse. *Id.*

Schramm eventually attempted to leave, hoping to receive care at another hospital, but CHOMP staff restrained her. *Id.* at 14-15. Shackled and sedated, Schramm ended up staying at CHOMP for three days and two nights.

Schramm alleges that, at some point during her stay, hospital staff formally detained her under California Welfare and Institutions Code § 5150. That provision, part of the Lanterman-Petris-Short Act ("LPS Act") authorizes the temporary detention of persons who, as a result of a mental health disorder, pose a danger to themselves or to others. Cal. Welf. & Inst. Code § 5150(a). Schramm insists that her behavior and mental state did not justify a § 5150 detention.

Schramm acknowledges that CHOMP staff attended to her during her stay at the hospital, but she says they failed to adequately respond to her rape allegation. Schramm alleges that, at some point while she was unconscious, Dr. Randeep Singh catheterized her to test for alcohol and illegal drugs, without her consent. *Id.* at 20. She also says that she met with a psychiatrist, Dr. Cynthia Hunt, but that the meeting took place two days after the assault. *Id.* at 21. Schramm alleges that because CHOMP failed to administer a rape kit, she was unable to pursue criminal charges against her attacker. *Id.* at 22. She frames CHOMP's actions in terms of "diagnostic overshadowing," the idea that medical professionals sometimes under-treat mentally ill patients due to bias. *Id.* at 13.

2

## B. Procedural Background

Schramm filed her original complaint in May 2017, Dkt. No. 1, and then the FAC a few months later, Dkt. No. 23. The FAC asserted federal and state law claims against eight defendants, including individual CHOMP staff members and various corporate institutions Schramm said were associated with the hospital. The defendants made a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which the Court granted. Dkt. No. 33. The Court granted Schramm leave to amend her EMTALA claims as to the institutional defendants, but dismissed the claims against the individuals without leave to amend. *Id.* at 4-7. As to the ADA, the Court dismissed Schramm's claims with leave to amend. *Id.* at 7-8. Finally, the Court declined to exercise jurisdiction over Schramm's state law claims, at least until she adequately pleaded a federal claim. *Id.* at 8

Scrahmm timely filed the SAC, Dkt. No. 38, which CHOMP moved to dismiss, Dkt. No. 40. The Court heard arguments from both sides at a hearing on January 23, 2018.

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, a court accepts all of the plaintiff's factual allegations as true and construes the pleadings in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court will not assume the truth of legal conclusions, and must consider obvious alternative explanations for the defendant's behavior. *See Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (*quoting Twombly*, 550 U.S. at 682). "Dismissal may also be based on the absence of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Separately, a court must liberally construe pleadings by litigants who represent themselves. *See Haines v. Kerner*, 404 U.S. 519 (1972). Dismissal of a pro se complaint without leave to

3

amend is proper only if it is "absolutely clear that no amendment can cure the defect." *Murphy v. United States Postal Serv.*, C 14-02156-SI, 2014 WL 4437731, at *2 (N.D. Cal. 2014) (*quoting Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980)).

**III. DISCUSSION**

    **A. Preliminary Matters**

        **1. CHOMP Is the Only Defendant**

The SAC appears to name eight defendants, but Schramm clarified at the January 23 hearing that she intends to proceed against only CHOMP, at least for now.

The caption of the second amended complaint includes the names of five individuals, including doctors, nurses, and security personnel at the hospital. At the hearing, Schramm explained that she did not mean to sue any of those people under EMTALA or the ADA – she simply failed to delete their names from the caption. However, Schramm indicated that she might want to pursue state law claims against those individuals. That would require further amendment of the complaint, an issue the Court addresses in more detail below.

Additionally, in an attempt to sue CHOMP, Schramm named as defendants three institutions: Montage Health, Community Hospital Endowments, and Monterey Bay Emergency Physicians Medical Corporation. Schramm alleges that Montage Health and Community Hospital Endowments recently merged to form CHOMP's parent company, though CHOMP disputes this characterization of its corporate structure. To date, the only institutional defendant to appear in this case is CHOMP. At the hearing, Schramm explained that her ultimate goal is to sue CHOMP. She agreed that the Court could treat CHOMP as the only defendant for the purpose of this motion. When the Court asked, "So, as it presently stands in the second amended complaint, you're only suing CHOMP, right?" she replied, "Yes."

Therefore, the Court will proceed to rule on this motion with the understanding that there are only two relevant parties, Schramm and CHOMP.

        **2. State Law Claims**

Schramm apparently misunderstood the implications of the Court's earlier decision to decline jurisdiction over her state law claims.

4

As noted above, when the Court dismissed the federal claims in the FAC, it also declined to exercise jurisdiction over Schramm's state law claims unless and until she adequately pleaded a federal cause of action. In the SAC, however, Schramm raised only federal claims. She wrote, "Should [her] EMTALA and ADA claim[s] survive a motion to dismiss, [she] reserves the right to re-assert her state claims and requests leave to amend the federal Complaint to include the state law claims."

At the January 23 hearing, the Court explained that this was improper. Schramm could have reasserted her state law claims in the SAC, but under Federal Rule of Civil Procedure 15, she may not reserve the right to amend in the future.

Accordingly, if Schramm wishes to further amend her complaint to reassert her state law claims, she must either obtain written consent from CHOMP or permission from the Court. If and when Schramm requests leave to amend, she must include with her request a copy of her proposed amended complaint.

### 3. Improper Amendment of the SAC

Schramm also impermissibly tried to add a new claim, this one for violation of her civil rights.

In the SAC, Schramm argued – in the middle of a discussion about diagnostic overshadowing and § 5150 detention – that CHOMP and Monterey County have "such an intertwined relationship" that the hospital is a "state actor[ ] under color of law." Dkt. No. 38 at 17. Schramm amplified this idea in her opposition to CHOMP's motion to dismiss, asserting for the first time a claim for violation of her fourth and fourteenth amendment rights under 42 U.S.C. § 1983. Dkt. No. 45 at 34.

Schramm's efforts were improper in two respects. First, a plaintiff may not amend her complaint by way of a brief in opposition to a motion to dismiss. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998). Second, when the Court dismissed the FAC with leave to amend, it did not give Schramm permission to raise entirely new claims in the SAC. Therefore, even if the SAC's passing allusion to civil rights law were adequate to raise a § 1983 claim (it is not), that claim would not properly be before the Court.

Accordingly, the Court will not consider Schramm's § 1983 claim. As with the state law claims discussed above, if Schramm wishes to assert a civil rights claim, she must request permission from CHOMP or the Court. She must include with that request a copy of her proposed amended complaint.

### 4. Motion Paper Page Limit

Finally, Schramm's opposition far exceeded the page limit set by the local rules. In doing so, Schramm made new factual allegations, including new details about the nature of her sexual assault. The Court denies CHOMP's request to strike the last five pages of the opposition. However, for the purpose of this motion, the Court is limited to considering the facts as pleaded in the SAC.

## B. EMTALA

Schramm asserts two claims under EMTALA. First, she argues that CHOMP failed to perform an appropriate medical screening examination when she arrived at the emergency room. Dkt. No. 38 at 23-26. Second, she argues that CHOMP discharged her without stabilizing her emergency medical condition. *Id.* at 26-27

EMTALA prohibits a defined class of hospitals from "dumping" indigent patients, either by refusing to care for such patients or by discharging them before their conditions stabilize. *See Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir. 1995). To state a claim under EMTALA, a plaintiff must allege that either (1) she requested examination or treatment from the emergency department of a covered hospital, and that the hospital failed to conduct an "appropriate medical screening . . . to determine whether or not an emergency medical condition . . . exist[ed]," or (2) once the hospital determined that the plaintiff had an emergency medical condition, the hospital improperly transferred the plaintiff before stabilizing her condition. *See* 42 U.S.C. §§ 1395dd(a), (b). Transfer is defined in EMTALA to include discharge and movement to another facility. 42 U.S.C. § 1395dd(e)(4). Stabilization is defined as providing medical treatment such that "no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility . . . ." 42 U.S.C. § 1395dd(e)(3).

As to the screening requirement, EMTALA "does not define the term 'appropriate medical screening examination,' other than to state that its purpose is to identify an 'emergency medical condition.'" *Eberhardt*, 62 F.3d at 1257 (*citing* 42 U.S.C. § 1395dd(e)(1)(A)). An emergency medical condition is "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in – (i) placing the health of the individual . . . in serious jeopardy; (ii) serious impairment to bodily functions; or (iii) serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1)(A).

Schramm claims that CHOMP violated EMTALA's screening requirement when it "was made aware of the rape but failed to take the medical complaint seriously and denied plaintiff an appropriate medical screening rape exam . . . ." Dkt. No. 38 at 24. CHOMP says, however, that Schramm cannot state a claim for relief under EMTALA because "sexual assault is not a **medical condition** manifesting itself by acute symptoms of sufficient severity." Dkt. No. 40 at 8-9. CHOMP cites to three EMTALA cases not involving rape to argue that rape is therefore excluded from EMTALA's definition of "emergency medical condition." *Id.* at 9. Schramm, in her reply, points out that at least one state court disagrees. *See C.M. v. Tomball Reg'l Hosp.*, 961 S.W.2d 236, 241-42 (Tex. App. 1997) (plaintiff who was turned away from hospital after reporting a rape could proceed with EMTALA screening claim).

The Court does not need to reach CHOMP's argument that rape is not an "emergency medical condition" under EMTALA because the Court is satisfied that Schramm adequately pleaded that she arrived at CHOMP with a qualifying condition. The SAC alleges that Schramm was gravely disoriented, in severe pain in her neck and abdomen, and that her leg was covered in scratches and bruises, all in addition to having suffered a sexual assault. Dkt. No. 38 at 8-11. Taking all of these issues together, it is reasonable to expect that if the hospital failed to treat her, Schramm's health would be in serious jeopardy.

Nevertheless, the Court will grant CHOMP's motion to dismiss Schramm's EMTALA screening claim without leave to amend. EMTALA's screening requirement is narrow. A hospital need only conduct a screening that is reasonably designed to identify whether the patient is

7

suffering from an emergency medical condition. Even if a hospital negligently "fails to detect or . . . misdiagnoses an emergency condition," it does not violate EMTALA. *See Bryan v.Adventist Health Sys./W.*, 289 F.3d 1162, 1166 (9th Cir. 2002). At its core, EMTALA's screening provision forces hospitals to ask a simple question – "Is something wrong?" – and to go about answering that question in a reasonable way. On the facts alleged here, CHOMP satisfied that requirement. First, CHOMP staff identified *something* wrong with Schramm. That condition was so much of an emergency that CHOMP forced Schramm to stay against her will. Second, Schramm acknowledges that she was treated by multiple health professionals over the course of multiple days at the hospital. Maybe CHOMP staff identified the wrong emergency, and maybe they did not adequately respond to Schramm's rape allegation. But Congress passed EMTALA to prevent hospitals from turning patients away; that did not happen in this case.

The Court also dismisses Schramm's EMTALA stabilization claim without leave to amend. EMTALA's stabilization requirement is, like the screening requirement, narrow. Hospitals need only provide care such that "no material deterioration of the condition is likely" to result if the patient is discharged. *See* 42 U.S.C. § 1395dd(e)(3). In *Bryant*, the Ninth Circuit held that EMTALA's stabilization requirement "ends when an individual is admitted for inpatient care." 289 F.3d at 1168. Here, Schramm alleges that she stayed at CHOMP for three days and two nights, during which time she was attended to by multiple doctors and nurses. Again, Schramm may object to the kind of care she received, and such complaints may be actionable on other grounds, but she cannot plausibly allege that CHOMP threw her out before at least attempting to provide her with medical care. The Court is convinced that no amendment could cure the defects with Schramm's EMTALA claims, so they are dismissed without leave to amend.

**C.     ADA**

Schramm, who claims she is disabled due to bipolar disorder, raises three claims under the ADA. First, she argues that CHOMP unlawfully discriminated against her when it failed to take her rape allegation seriously. Dkt. No. 38 at 27-29. Second, CHOMP discriminated by refusing to allow her to decline treatment and leave the hospital. *Id.* at 29-30. Third, in the course of restraining Schramm, CHOMP failed to make a reasonable accommodation for her disability. *Id.*

8

at 31- 32.

"To prevail on a Title III discrimination claim, the plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007). Title III's discrimination ban applies to hospitals. 42 U.S.C. § 12181(7)(F). Prohibited discrimination includes denying a disabled person the opportunity to benefit from, or participate equally in, the services of a public accommodation. *See* 42 U.S.C. §§ 12182(B)(1)(A)(i), (ii).

As to Schramm's first ADA claim – concerning the failure to treat the sexual assault – CHOMP does not dispute that Schramm is disabled or that the hospital is covered by the ADA's anti-discrimination provisions. CHOMP complains that Schramm failed to offer any cases holding that a hospital can be liable for failing to perform a rape screening exam, Dkt. No. 40 at 14-15, but that does not resolve the matter one way or the other. CHOMP's main argument is that Schramm's allegations are contradictory and implausible. This argument has significant force. On the one hand, Schramm was at the hospital for multiple days, attended to by multiple hospital staff members, and subject to a 5150 detention. Those allegations are inconsistent with the idea that CHOMP denied Schramm treatment on the basis of her disability. If anything, they suggest that CHOMP was actively treating and monitoring Schramm during a mental health episode. On the other hand, Schramm says that she told hospital staff she had been raped, and that CHOMP never administered a rape kit and never tested for sexually transmitted diseases. If true, that strikes the Court as highly unusual. In other words, maybe she was not denied all hospital services, but she was denied the particular service of treatment for an alleged sexual assault.

Schramm runs into more trouble with her other two ADA claims. Schramm asserts that CHOMP discriminated against her by failing to respect her refusal to consent to treatment. CHOMP responds that the LPS Act shields the hospital with immunity for placing Schramm in § 5150 detention. Under Welfare & Institutions Code § 5278, "Individuals authorized under this part to detain a person . . . shall not be held either criminally or civilly liable for exercising this

9

authority in accordance with the law." That last part is critical, as immunity only attaches if § 5150 authority is exercised lawfully, something Schramm disputes. *See Rhodes v. Placer Cty.*, No. 2:09-CV-00489 MCE, 2011 WL 1302264, at *11–12 (E.D. Cal. Mar. 31, 2011), *adopted by* No. 2:09-CV-00489-MCE, 2011 WL 1739963 (E.D. Cal. May 4, 2011) (declining to grant motion to dismiss based on defendants' claimed statutory immunity where court could not determine lawfulness of § 5150 detention on the pleadings). CHOMP makes a more compelling argument, however, in its reply brief, where it suggests that allowing Schramm to proceed with this claim is fundamentally inconsistent with the LPS Act. "If that were true [that CHOMP discriminated by blocking Schramm's attempted exit], then every single patient that attempts to leave a health care facility . . . and is placed on a 5150 hold, would have a valid and cognizable claim under the ADA . . . ." Dkt. No. 47 at 6-7.

The point is well taken. Normally, treating a patient without her consent is battery. Indeed, in the constitutional law context, the U.S. Supreme Court has said that mentally ill prisoners have a liberty interest in avoiding the unwanted administration of antipsychotic drugs. *See Washington v. Harper*, 494 U.S. 210, 221-22 (1990). But it cannot be that a § 5150 detention gives rise to a claim for mental disability discrimination. For one thing, as CHOMP points out, that would undermine the LPS Act's immunity provision. LPS Act immunity is not absolute, but it "extends to claims based on facts that are inherent in an involuntary detention that is undertaken pursuant to section 5150." *Brumfield v. Munoz*, No. 08 CV 0958 WQH NLS, 2008 WL 4748176, at *4 (S.D. Cal. 2008) (*quoting Jacobs v. Grossmont Hospital*, 108 Cal. App. 4th 69, 78-79 (2003)). Here, Schramm's first ADA claim is about exclusion from hospital services, but her second and third claims are ultimately about her objection to the § 5150 detention itself. The LPS Act presupposes that disabled persons might be treated differently from the non-disabled, but that is not the kind of discrimination the ADA is meant to address. *Cf.* 28 U.S.C. § 12182(b)(3) (carving out a public safety exception from Title III's non-discrimination provisions).

The Court is also satisfied that Schramm's third ADA claim – for failure to make a reasonable accommodation – simply does not make sense. If Schramm is challenging the fact that she was detained under § 5150, that is an argument against the lawfulness of the detention. The

same is true if Schramm is challenging the way she was detained (e.g., that CHOMP used excessive force). A § 5150 detention necessarily involves the use of some force; there is just no way around it.

There is, however, a more fundamental problem with all of Schramm's ADA claims – standing. Neither side addressed the issue in their motion papers, but a court may raise standing issues *sua sponte*. *See Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011) (citation omitted). Title III provides a private right of action for victims of discrimination, but the only remedy available to aggrieved individuals is injunctive relief. To establish standing to pursue injunctive relief, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks and citation omitted). Past wrongs may be evidence of the risk of repeated injury, but past wrongs in themselves are insufficient to establish standing. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (*citing Cty. Of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) *and O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Nothing in the second amended complaint suggests that Schramm is at risk of repeated injury in the future from CHOMP. To the contrary, Schramm was adamant that she not be taken to CHOMP in May 2015. There is no reason to believe she would go back of her own accord, and her past injury is not sufficient to establish standing.

So, the Court dismisses Schramm's second and third ADA claims – for failure to let her decline treatment and failure to make a reasonable accommodation – without leave to amend. As to the first claim – for failure to treat Schramm's alleged sexual assault – the Court dismisses the claim with leave to amend. Even if the SAC includes enough facts to suggest a plausible connection between Schramm's disability and CHOMP's failure to treat her for rape, the complaint fails to establish standing. Therefore, if Schramm wishes to further amend her complaint, she must explain why she has standing to sue under the ADA.

**IV. CONCLUSION**

For the reasons explained above, the Court rules as follows. Schramm's EMTALA claims are all dismissed without leave to amend. All but the first of Schramm's ADA claims (the claim

11

concerning CHOMP's alleged failure to attend to the sexual assault) are also dismissed without leave to amend. If Schramm wishes to further amend her complaint to re-assert the first ADA claim, she must explain why she has standing. Furthermore, if Schramm wishes to amend her complaint to include state law claims, civil rights claims, or anything else not included in the SAC, she must either obtain CHOMP's written consent or permission from the Court. She must include with any such request a copy of her proposed amended complaint. Schramm should also be careful in describing who she wishes to sue, and which claims correspond to which defendants.

If Schramm wishes to amend her complaint but does not intend to add new claims or defendants (i.e., she re-asserts only the first ADA claim), she must file the amended complaint within thirty days (i.e., by April 4, 2018).

If, however, Schramm wishes to add new claims and/or defendants (e.g., state law claims, civil rights claims, individual defendants, etc.), she must file a motion with the Court seeking leave to amend by April 4. She must include with that motion a copy of the proposed amended complaint. Alternatively, she may seek the defendants' written consent to her amendments. That written consent, along with the consented-to complaint, must be filed by April 4.

Finally, the Court strongly encourages Schramm to continue to seek out the assistance of the Federal Pro Se Program. Appointments can be made by calling (408) 297-1480, or by going to Room 2070 of the San Jose federal courthouse, 280 South First Street, San Jose, CA 95113. More information is available at http://www.cand.uscourts.gov/helpcentersj.

**IT IS SO ORDERED.**

Dated: March 5, 2018

HOWARD R. LLOYD
United States Magistrate Judge

12