UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KELLY SCHRAMM,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MONTAGE HEALTH, et al.,<br><br>　　　　Defendants. | Case No.17-cv-02757-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 85 |

Plaintiff Kelly Schramm sues Community Hospital of the Monterey Peninsula ("CHOMP"), its employees, and related entities for the following: (1) violation of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd et seq.; (2) violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.; (3) violation of section 504 of the Rehabilitation Act of 1973, as amended at 29 U.S.C. § 794; (4) violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq.; (5) intentional infliction of emotional distress; (6) assault and battery; (7) false imprisonment; and (8) violation of the Lanterman Petris Short Act ("LPS Act"), Cal. Welf. & Inst. Code §§ 5000 et seq. Dkt. No. 84. Defendants CHOMP, Montage Health, James Montgomery, Kelly Schmidt, Randeep Singh, M.D., and Steven Packer, M.D. move to dismiss claims 5, 6, and 7 in the Third Amended Complaint ("TAC") for intentional infliction of emotional distress, assault and battery, and false imprisonment for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Dkt. No. 85. In addition, defendants move to dismiss claims 5, 6, and 7 on the ground that they are immune from suit under the LPS Act. Finally, defendants move to dismiss all claims against Dr. Packer.

---

[1] All parties who have appeared have consented to magistrate judge jurisdiction. Dkt. Nos. 7, 19.

The Court heard oral argument on defendants' motion on April 9, 2019. Dkt. No. 95. Having considered the parties' briefs and the arguments made at the hearing, the Court grants in part and denies in part defendants' motion to dismiss the TAC.

## I. BACKGROUND

Ms. Schramm alleges that in May 2015, she was taken to CHOMP against her wishes for medical attention following a sexual assault, where defendants failed to administer a rape kit or take her rape allegation seriously because they knew she suffered from bipolar disorder. Dkt. No. 84 ¶¶ 34-80. Ms. Schramm describes this behavior as "diagnostic overshadowing," in which mentally ill patients receive inadequate or delayed treatment on account of the misattribution of their physical symptoms to their mental illness. *Id.* ¶¶ 76-79. After she concluded that she would not receive the appropriate medical attention, Ms. Schramm attempted to leave CHOMP to seek care elsewhere. *Id.* ¶¶ 80-82. She says she was not permitted to leave and was instead forcibly restrained (resulting in additional physical injuries), administered inappropriate and harmful medication, catheterized her without her consent, and eventually formally (and unlawfully) detained pursuant to California Welfare and Institutions Code § 5150 for three days and two nights. *Id.* ¶¶ 84-153. Because defendants did not administer a rape kit, Ms. Schramm says she was unable to obtain evidence necessary to pursue criminal charges against her assailant. *Id.* ¶¶ 160-161.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

1 facially plausible when it "allows the court to draw the reasonable inference that the defendant is
2 liable for the misconduct alleged." *Id.*

**III. DISCUSSION**

**A. Defendant Steven Packer, M.D.**

Defendants move to dismiss Dr. Packer because Ms. Schramm has not named him as a defendant under any of the TAC's causes of action. Dkt. No. 85 at 7. Ms. Schramm does not oppose dismissing Dr. Packer. Dkt. No. 87 at 2. The Court therefore grants defendants' motion to dismiss Dr. Packer.

**B. Claim 5: Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress, a plaintiff must plausibly allege: "(1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by plaintiff; and (3) plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1053 (N.D. Cal. 2018) (quoting *Conley v. Roman Catholic Archbishop of San Francisco*, 85 Cal. App. 4th 1126, 1133 (2000)) (internal quotation marks omitted).

**1. Defendant James Montgomery**

Defendants argue that the TAC fails to plead sufficient facts supporting a claim for intentional infliction of emotional distress against Mr. Montgomery, a security guard at the hospital. Dkt. No. 85 at 9.

**a. Outrageous conduct**

First, defendants argue that Ms. Schramm does not plead outrageous conduct by Mr. Montgomery. Whether conduct is outrageous is "generally a question of fact for the jury." *Doe v. City & Cty. of San Francisco*, No. C10-04700 TEG, 2012 WL 2132398, at *5 (N.D. Cal. June 12, 2012). Defendants acknowledge that a plaintiff's susceptibility to emotional distress due to her physical or mental condition can support a finding of outrageous conduct. Dkt. No. 89 at 5 (citing *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal. App. 3d 1458, 1469 (1990)). The relationship between the parties may also affect whether conduct is deemed outrageous. Outrageous "conduct

3

may arise from an abuse by the actor of a position, a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Bundren v. Superior Court*, 145 Cal. App. 3d 784, 792 (1983) (quoting Restatement (Second) of Torts § 46 (1965)); *see also Agrawal v. Johnson*, 25 Cal. 3d 932, 946 (1979) ("Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress."), *disapproved of on other grounds in White v. Ultramar, Inc.*, 21 Cal. 4th 563 (1999). Additionally, battery performed in the course of medical care may be sufficient to support a claim for emotional distress. *See, e.g.*, *Nelson v. Gaunt*, 125 Cal. App. 3d 623, 645 (1981).

Here, Ms. Schramm says that by the time she arrived at the hospital she had already been injured, was already extremely distressed as a result of a sexual assault, and became further distressed following discriminatory treatment on the basis of her bipolar status when Mr. Montgomery physically prevented her from leaving the hospital. Dkt. No. 84 ¶¶ 46-94. She says Mr. Montgomery then used excessive force to body slam her onto a metal table, causing her further physical injuries, even though her demeanor was peaceful and non-threatening. *Id.* ¶¶ 91-94, 103.

Given Ms. Schramm's circumstances, and the relationship between Ms. Schramm as a patient and Mr. Montgomery as a security guard, the allegations of the TAC adequately support her claim that Mr. Montgomery's conduct was outrageous.

### b. Intent

Second, defendants argue that Ms. Schramm does not adequately plead that Mr. Montgomery intended to cause her emotional distress. Dkt. No. 85 at 9. Ms. Schramm counters that Federal Rule of Civil Procedure 9(b) permits a plaintiff to generally plead intent, which she argues she has done here. Dkt. No. 86 at 14. Defendants argue that Rule 9(b) applies only to allegations of fraud or mistake, and that Ms. Schramm's bare allegation that Mr. Montgomery intended to cause emotional distress fails to satisfy the *Twombly/Iqbal* standard. Dkt. No. 87 at 8–

4

10.

The Court has not been able to locate any case law within the Ninth Circuit applying Rule 9(b) to general allegations of intent in the context of a claim for emotional distress. Nevertheless, "[a] plaintiff seeking to recover for intentional infliction of emotional distress may also demonstrate that the defendant acted with 'reckless disregard of the probability of causing' severe emotional distress." *Cline*, 329 F. Supp. 3d at 1053 (quoting *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1157 (C.D. Cal. 2001)). Such reckless disregard may be shown when a defendant "devote[s] little or no thought to the probable consequences of [her] conduct." *Id.* (quoting *KOVR-TV, Inc. v. Superior Court*, 31 Cal. App. 4th 1023, 1032 (1995)).

Here, Ms. Schramm alleges that Mr. Montgomery laughed at her while preventing her from leaving the hospital, butted her backward with his chest, blocked her from moving around him, and body slammed her onto a metal gurney, breaking her ribs. Dkt. No. 84 ¶¶ 84-94. The Court finds that these allegations are sufficient to support an inference that Mr. Montgomery intended to cause emotional distress or acted with reckless disregard of the probability of causing emotional distress.

### c. Severe or extreme emotional distress

Third, defendants also contend that Ms. Schramm did not sufficiently plead that she suffered "severe or extreme emotional distress." Dkt. No. 85 at 10. Ms. Schramm alleges that after she was physically restrained by defendants, including Mr. Montgomery, she experienced "shock and disbelief," "had a severe stress reaction and started having . . . an asthma attack," and "started yelling for help very loudly." Dkt. No. 84 ¶¶ 93, 102, 115. The Court finds that these allegations are sufficient to allege severe or extreme emotional distress.

Accordingly, the Court denies defendants' motion to dismiss the emotional distress claim against Mr. Montgomery.

### 2. Defendant Kelly Schmidt

Defendants' arguments for dismissing the emotional distress claim against Ms. Schmidt, a nurse at the hospital, track those for Mr. Montgomery. They contend that Ms. Schramm failed to plead outrageous conduct by Ms. Schmidt, intent to cause emotional distress, or sufficiently severe

emotional distress. Dkt. No. 85 at 10–11.

### a. Outrageous conduct

Ms. Schramm alleges that Ms. Schmidt treated her dismissively and differently based on Ms. Schramm's mental health status. She says Ms. Schmidt did not believe that Ms. Schramm suffered from physical injuries or sexual assault because Ms. Schramm's medical files stated that she is bipolar. As a result, Ms. Schmidt did not provide her medical care that other non-bipolar sexual assault victims would have received, such as a toxicology exam for date rape drugs, prophylactic HIV medication, a rape kit, or a sexual assault medical screening exam performed by a sexual assault nurse examiner. Dkt. No. 84 ¶¶ 46-83. Instead, Ms. Schmidt acted in an irritated manner and without the consideration she would have otherwise shown a sexual assault victim, including forcefully jerking Ms. Schramm's arm to take her blood pressure. *Id.* ¶¶ 62-63. Ms. Schramm says that after she was physical restrained, Ms. Schmidt tightened her restraints and shackled Ms. Schramm's already-restrained left wrist so tightly that it cut off her circulation. *Id.* ¶ 114. Ms. Schramm says that Ms. Schmidt then administered Haldol, an anti-psychotic medication that caused Ms. Schramm to lose consciousness. *Id.* ¶¶ 117-127. Ms. Schramm says that no doctor had ordered Haldol to be administered, that Haldol conflicted with the prescription medications Ms. Schramm had been taking at the time, and that the drug interactions caused her to suffer what was later diagnosed as myocardial infarction. *Id.* She also says she suffered other negative physical and mental effects that lasted for the following month. *Id.* ¶¶118, 132. Ms. Schramm says that Ms. Schmidt administered Haldol merely for the hospital staff's convenience. *Id.* ¶¶ 124, 248.

Considering Ms. Schramm's circumstances at the time of this conduct as described above, and the relationship between Ms. Schramm as a patient and Ms. Schmidt as her nurse, the Court concludes that Ms. Schramm sufficiently alleges outrageous conduct. *Doe*, 2012 WL 2132398, at *5.

### b. Intent

With respect to Ms. Schmidt's intent to cause emotional distress or reckless disregard for the probability of causing emotional distress, Ms. Schramm relies on allegations that, even though

6

she was in pain and seeking treatment for sexual assault, Ms. Schmidt acted annoyed and irritated, forcefully jerked her arm while taking her blood pressure, and asked Ms. Schramm questions in an irritated and annoyed tone that suggested she did not believe Ms. Schramm had been injured or assaulted, including asking Ms. Schramm whether she had been drinking and asking, "So what is your problem?" *Id.* ¶¶ 49-63, 69-73. Ms. Schramm also alleges that Ms. Schmidt used a metal shackle in a manner that caused her significant discomfort and that she administered Haldol without authorization or Ms. Schramm's consent, simply for the hospital's convenience. *Id.* ¶¶ 114-117.

The Court finds that these allegations are sufficient to support an inference that Ms. Schmidt intended to cause emotional distress or acted with reckless disregard of the probability of causing emotional distress.

### c. Severe or extreme emotional distress

With respect to whether Ms. Schramm alleges severe or extreme emotional distress as a result of Ms. Schmidt's conduct, Ms. Schramm alleges that she was already in physical pain and distress following a sexual assault, and she says she suffered further emotional distress from the fact that Ms. Schmidt appeared not to believe her and treated her dismissively. *Id.* ¶¶ 46-83. Ms. Schramm says that while attempting to leave, she felt "ashamed, fearful and she was in pain" and that "[i]t was hard enough for [her] to get help for rape, let alone being dismissed by the nurses who were annoyed and hostile to Ms. Schramm because she was labeled bipolar." *Id.* ¶¶ 74-75. Ms. Schramm also pleads that she experienced fear when Ms. Schmidt shackled her to the bed even though she was already restrained. *Id.* ¶ 115. The Court finds that these allegations are sufficient to allege severe or extreme emotional distress.

Accordingly, the Court denies defendants' motion to dismiss the emotional distress claim against Ms. Schmidt.

### 3. Defendant Dr. Randeep Singh

Defendants argue that Ms. Schramm fails to state a claim for emotional distress as to Dr. Singh because she does not adequately allege extreme and outrageous conduct, intent to cause emotional distress, or severe or extreme emotional distress. Dkt. No. 85 at 11.

7

In contrast to the allegations against Mr. Montgomery and Ms. Schmidt, the TAC contains few allegations regarding Dr. Singh's conduct. Ms. Schramm alleges that Dr. Singh was the emergency room doctor on call, but says that he arrived at the emergency room only after the events involving Mr. Montgomery and Ms. Schmidt described above occurred. Dkt. No. 84 ¶ 120. Ms. Schramm alleges that Dr. Singh wrote in his notes that she was "in and out of consciousness" and that while she was unconscious, he caused Ms. Schramm to be catheterized "merely so [he] could see if [she] was under the influence of any alcohol or illegal drugs." *Id.* ¶ 133. There are no other factual allegations concerning Dr. Singh.

The Court finds that these allegations are not sufficient to support a claim for intentional infliction of emotional distress. Ms. Schramm does not explain how Dr. Singh's actions constitute outrageous conduct, even assuming a jury could conclude that catheterization for the purpose of testing for alcohol or drugs was not medically necessary.

In addition, the TAC contains no allegations suggesting that Dr. Singh intended to cause emotional distress or from which such intent may be inferred. At the hearing, Ms. Schramm argued that Dr. Singh aided and abetted other defendants in causing her distress, citing *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006). In *First Alliance*, the Ninth Circuit acknowledged the California common law rule that a defendant may be liable for aiding and abetting an intentional tort if the defendant knew that the other tortfeasor's conduct constituted a breach of duty and gave substantial assistance or encouragement to the other to so act. *Id.* at 993. But this rule requires the defendant to have had "actual knowledge of the specific primary wrong the defendant substantially assisted." *Id.* The TAC does not allege any facts suggesting that Dr. Singh was aware of other defendants' allegedly tortious conduct, or that he substantially assisted or encouraged their conduct.

Finally, Ms. Schramm does not identify any extreme emotional distress associated with Dr. Singh's conduct, as opposed to the conduct of others.

Accordingly, the Court grants defendants' motion to dismiss the emotional distress claim against Dr. Singh.

### 4. CHOMP and Montage Health

Defendants argue that Ms. Schramm fails to state a claim for emotional distress against CHOMP and Montage Health based on a theory of vicarious liability. Dkt. No. 85 at 11–15.

In certain circumstances, an employer may be vicariously liable for the torts of its employees committed within the scope of employment, even if those torts are willful, malicious, or even criminal, and unauthorized by the employer. *Lisa M. v. Henry Mayo Newhall Memorial Hosp.*, 12 Cal. 4th 291, 296–97 (1995). In order for vicarious liability to attach, the tortious conduct must be engendered or arise from the employee's work for the employer. *Id.* at 297–98. The incident leading to the tortious injury must be an "outgrowth" of the employment, the risk of tortious injury must be "inherent in the working environment" or "typical of or broadly incidental to the enterprise the employer has taken." *Id.* at 298 (internal quotation marks and citations omitted). The tortious conduct must be "a generally foreseeable consequence of the activity" in the sense that "in the context of the employer's enterprise[,] an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id.* at 299 (quoting *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 618 (1975)).

Defendants assert that operating a hospital emergency room is not an enterprise giving rise to intentional outrageous conduct. Dkt. No. 85 at 13–14. They argue that CHOMP and Montage Health cannot be held responsible for *intentional* infliction of emotional distress because intentionally causing emotional distress is "a substantial deviation from any hospital employee's employment duties." *Id.* While the conduct alleged in the TAC may indeed be a substantial deviation from the hospital's employees' duties, that observation is not dispositive. The question is whether the allegedly tortious conduct is "a generally foreseeable consequence of the activity" in the context of the hospital emergency room in which it occurred. *Lisa M.*, 12 Cal. 4th at 299; *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 219 (1991) ("The fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer.") (internal quotation marks and citations omitted); *Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 482 (2003) (finding that although tortfeasor's

conduct "was obviously not part of his job description," a reasonable trier of fact could find that using a knife and hot oil to attack a coworker and injuring intervening third parties was a risk that was "broadly incidental" to operating a restaurant).

Here, Ms. Schramm argues that the hospital's treatment practices with respect to patients like her who are noted as having a mental illness, combined with the particular circumstances of her interactions with Mr. Montgomery and Ms. Schmidt, are sufficient to hold CHOMP and Montage Health vicariously liable for their conduct. Dkt. No. 87 at 9–12. The Court notes that defendants have argued elsewhere in their briefing that Mr. Montgomery and Ms. Schmidt were merely providing medical care as part of their jobs and nothing more. *See, e.g.*, Dkt. No. 85 at 9 ("As a security guard, it is anticipated that MONTGOMERY may have to assist in detaining a patient that is being placed on a 5150 hold."); Dkt. No. 85 at 11 ("Based on the allegations, SCHMIDT was acting as a healthcare provider . . . . SINGH's sole involvement with plaintiff's care was limited to rendering medical services."). Crediting defendants' view that Mr. Montgomery and Ms. Schmidt both acted within the scope of their ordinary duties, those duties would appear to be at least incidental to the enterprise of CHOMP and Montage Health.

In any event, the question of whether an employee acted within the scope of employment, such that his or her employer is vicariously liable for the employee's tortious conduct, is ordinarily a question for fact for the jury. *Yamaguchi*, 106 Cal. App. 4th at 486. It only becomes a question of law when the facts are undisputed and no conflicting inferences are possible. *Lisa M.*, 12 Cal. 4th at 299 (quoting *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 213 (1991)). Based on the allegations of the TAC and the positions defendants have taken in their motion to dismiss, the Court cannot conclude as a matter of law that CHOMP and Montage Health may not be held liable for their employees' intentional torts.

Accordingly, the Court denies defendants' motion to dismiss the emotional distress claims as to CHOMP and Montage Health.

### C. Claim 6: Assault and Battery

To state a claim for assault under California law, a plaintiff must plead that "(1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a

10

harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm. *Lawrence v. City and Cty. of San Francisco*, 258 F. Supp. 977, 998 (N.D. Cal. 2017) (quoting *So v. Shin*, 212 Cal. App. 4th 652, 668–69 (2013), *as modified on denial of reh'g* (Jan. 28, 2013)). To state a claim for battery, a plaintiff must plead that "(1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching." *Id.* (quoting *So*, 212 Cal. App. 4th at 669).

Defendants contend that Ms. Schramm has not stated a claim for either assault or battery against Mr. Montgomery, Ms. Schmidt, or Dr. Singh.

### 1. Mr. Montgomery and Ms. Schmidt

Defendants argue that Ms. Schramm fails to adequately plead that either Mr. Montgomery or Ms. Schmidt intended to cause harmful or offensive contact sufficient to state a claim for assault or battery. The Court disagrees. This argument is unpersuasive for the same reasons defendants' arguments concerning intent to cause emotional distress are unpersuasive.

The requisite intent may be inferred from Ms. Schramm's allegations. As to Mr. Montgomery, Ms. Schramm alleges he "butt[ed] her backwards with his chest while laughing and smirking" and slammed her onto a metal table with enough force to break three of her ribs. Dkt. No. 84 ¶¶ 84-103. As to Ms. Schmidt, Ms. Schramm alleges that she "forcefully jerked Ms. Schramm's left arm to attempt to take [her] blood pressure," used a thick metal shackle to restrain Ms. Schramm's wrist which cut off her circulation, and administered the anti-psychotic medication Haldol to Ms. Schramm without her consent and caused her to lose consciousness. *Id.* ¶¶ 62, 114-127.

Accordingly, the Court denies defendants' motion to dismiss the assault and battery claim against Mr. Montgomery and Ms. Schmidt.

#### 2. Dr. Singh

Defendants argue that Ms. Schramm also fails to state a claim for assault or battery against Dr. Singh. First, they contend that the TAC does not contain any allegations that Dr. Singh actually touched Ms. Schramm. Second, defendants argue that Ms. Schramm fails to adequately plead that Dr. Singh intended to cause harmful or offensive contact sufficient to state a claim for assault or battery. Both arguments are well-taken.

The only contact by Dr. Singh pled in the TAC is the catheterization of Ms. Schramm. It is not clear whether Dr. Singh catheterized her himself or ordered someone else to do it. However, even assuming the catheterization could constitute harmful or offensive conduct by Dr. Singh, the Court agrees that Ms. Schramm does not plausibly allege facts from which an intent to harm or offend or to cause harmful or offensive contact may be inferred.

Accordingly, the Court grants defendants' motion to dismiss the claim for assault and battery against Dr. Singh.

#### 3. CHOMP and Montage Health

Defendants contend that Ms. Schramm has not pled a claim for assault and battery against CHOMP and Montage Health for two reasons. First, they argue that CHOMP and Montage Health are corporate entities and therefore incapable of causing any harm or offensive contact to another. Dkt. No. 85 at 16. Second, defendants reiterate their earlier argument that Ms. Schramm cannot allege a claim based on vicarious liability because intentional assault or battery is outside the scope of the individual defendants' employment. *Id.* The Court understands the TAC as pleading an assault and battery claim against CHOMP and Montage Health under a vicarious liability theory. For the reasons discussed above, the Court concludes that Ms. Schramm's allegations are sufficient to state a claim for vicarious liability for the alleged assault and battery by Mr. Montgomery and Ms. Schmidt. *See supra* Section III.B.4.

Accordingly, the Court denies defendants' motion to dismiss the assault and battery claim against CHOMP and Montage Health on a theory of vicarious liability.

### D. Claim 7: False Imprisonment

Under California law, false imprisonment is "the nonconsensual, intentional confinement

12

1 of a person, without lawful privilege, for an appreciable length of time, however short."
*Martensen v. Koch*, 942 F. Supp. 2d 983, 1001 (N.D. Cal. 2013) (quoting *Snyder v. Evangelical Orthodox Church*, 216 Cal. App. 3d 297, 303 (1989)) (internal quotation marks omitted). "A person is falsely imprisoned if he or she is wrongfully deprived of his or her freedom to leave a particular place by the conduct of another." *Id.* (quoting *Snyder*, 216 Cal. App. 3d at 303) (internal quotation marks omitted).

### 1. Dr. Singh

Defendants argue that Ms. Schramm fails to state a false imprisonment claim against Dr. Singh because she pleads no specific allegations as to Dr. Singh regarding detention or false imprisonment. Dkt. No. 85 at 18.

Ms. Schramm argues that Dr. Singh continued or prolonged the detention initiated by others in his position as the supervising doctor on call at the emergency room during the time she was there. Dkt. No. 87 at 22 (citing *Mohamed v. Soliman*, No. B276942, 2019 WL 718862, at *7 (Cal. Ct. App. Feb. 20, 2019); *Colin M. ex. Rel. Kelly v. St. Helena Hosp.*, No. C 08-01930 WHA, 2008 WL 4239770 (N.D. Cal. Sept. 12, 2008)). However, she does not plead that theory or any facts supporting it in the TAC. The bare allegation that Dr. Singh was "the ER doctor on call" is insufficient to state a claim for false imprisonment against him. Dkt. No. 84 ¶ 120. And as described above, Ms. Schramm has not adequately alleged a theory of aiding and abetting the conduct of others. *See supra* Section III.B.3.

Accordingly, the Court grants defendants' motion to dismiss the false imprisonment claim against Dr. Singh.

### 2. CHOMP and Montage Health

Defendants contend that Ms. Schramm fails to state a claim for false imprisonment against CHOMP and Montage Health for two reasons. First, they argue that CHOMP and Montage Health are corporate entities and therefore incapable of falsely imprisoning a natural person. Dkt. No. 85 at 17. Second, defendants reiterate their earlier argument that Ms. Schramm cannot allege a claim based on vicarious liability because acting with an intent to confine someone without a lawful privilege falls outside the scope of the individual defendants' employment. *Id.*

13

1 Here, Ms. Schramm alleges that CHOMP and Montage Health are liable for the conduct of Mr. Montgomery and Ms. Schmidt in restraining Ms. Schramm for days against her will and without justification. Defendants do not contend that Ms. Schramm fails to state a claim for false imprisonment against either Mr. Montgomery or Ms. Schmidt. For the reasons explained above, the Court concludes that Ms. Schramm adequately states a claim for vicarious liability for Mr. Montgomery's and Ms. Schmidt's conduct. *See supra* Section III.B.4.

Accordingly, the Court denies defendants' motion to dismiss the false imprisonment claim against CHOMP and Montage Health.

### E. LPS Immunity

Defendants contend that Mr. Montgomery, Ms. Schmidt, and Dr. Singh (and by extension, CHOMP and Montage Health) are immune from suit as a matter of law based on immunity under the LPS Act, California Welfare & Institutions Code § 5278. Section 5278 grants civil immunity to individuals authorized under the LPS to detain a person under California Welfare & Institutions Code § 5150, so long as the exercise of the authority is "in accordance with the law."

Ms. Schramm argues that LPS immunity does not apply here. First, she argues that LPS immunity "does not extend to negligent acts, intentional torts, or criminal wrongs committed during the course of the detention, evaluation, or treatment, or to injuries proximately caused by negligence." *Brumfield v. Munoz*, No. 08 CV 0958 WQH (NLS), 2008 WL 4748176, at *4 (S.D. Cal. Oct. 23, 2008) (quoting *Jacobs v. Grossmont Hosp.*, 108 Cal. App. 4th 69, 78 (2003)) (internal quotation marks omitted). Second, she argues that LPS immunity only applies if probable cause for detention existed and the detention was conducted "in accordance with the law," and she says no probable cause existed for her detention. *See* Dkt. No. 85 at 9 (citing Cal. Welf. & Inst. Code § 5278); *see also Tate v. Kaiser Found. Hosps.*, No. 2:12-cv-9075-CAS (RZx), 2014 WL 176625 at *6–7 (C.D. Cal. Jan. 15, 2014) (noting that "the immunity does not apply if the detention does not comply with the other procedures set forth in the LPS Act"). Third, Ms. Schramm argues that whether defendants are immune under the LPS Act is a factual question that may not be resolved at the pleading stage. *See, e.g.*, *Rhodes v. Placer Cty.*, No. 2:09-cv-00489 MCE KJN PS, 2011 WL 1302264, at *11–12 (E.D. Cal. Mar. 31, 2011).

14

Ms. Schramm notes that she has pled intentional torts against defendants. In addition, Ms. Schramm points to the allegations in her eighth claim for relief which describe the circumstances of the 5150 hold to which she was subjected, including her allegations that defendants lacked probable cause for a 5150 hold because Ms. Schramm was neither gravely disabled nor a danger to others, and that she simply attempted to leave the hospital peacefully. Dkt. No. 84 ¶¶ 83-90, 147-151; *see also* Dkt. No. 84 ¶¶ 237-248 (pleading other reasons why defendants violated the LPS Act, including failing to inform Ms. Schramm why she was being taken into custody, failing to assess her in person before detaining her, shackling her, and administering medication without her consent as punishment). These allegations plausibly support Ms. Schramm's claim that there was no probable cause for the 5150 hold. Cal. Welf. & Inst. Code § 5278.

In view of the allegations of the TAC, the Court cannot conclude that LPS immunity bars Ms. Schramm's claims as a matter of law. *Rhodes*, 2011 WL 1302264, at *11–12.

### F. Leave to Amend

While leave to amend generally is granted liberally, the Court has discretion to dismiss a claim without leave to amend if amendment would be futile. *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 3d 1193, 1197 (N.D. Cal. 2010) (citing *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996)).

Defendants' only argument against granting leave to amend is that Ms. Schramm has already previously amended her complaint. They do not argue that it would be futile to permit her to do so again and, in fact, agree with Ms. Schramm that she should receive leave to amend if it appears possible that she can correct the defects in the TAC. Dkt. No. 89 at 14. In opposing dismissal, Ms. Schramm does not say whether she could plead facts sufficient to state claims against Dr. Singh for intentional infliction of emotional distress, assault and battery, or false imprisonment. Because the Court cannot conclude that it would be futile to permit Ms. Schramm leave to amend these claims against Dr. Singh, the Court grants Ms. Schramm leave to do so.

### IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion to dismiss the TAC as follows:

15

(1) All claims against Steven Packer, M.D. are hereby dismissed without prejudice.

(2) Claims 5, 6, and 7 against Dr. Singh are dismissed with leave to amend.

(3) Claims 5, 6, and 7 against Mr. Montgomery, Ms. Schmidt, CHOMP, and Montage Health are not dismissed.

To the extent she possesses a Rule 11 basis for doing so, Ms. Schramm may file a fourth amended complaint addressing only the deficiencies in the claims with respect to Dr. Singh by **July 15, 2019**.

**IT IS SO ORDERED.**

Dated: July 1, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge